*Petitioner is represented by counsel:*
KENT A. RUSSELL (Cal. Bar #52021)
2299 Sutter Street, San Francisco, CA 94115
Ph: (415) 929-8301. Fax: (866)235-8688.
E-mail: kentrussell@sbcglobal.net

FILED
2008 JUL -3 P
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J.

**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name Merino (Last) Mario (First) (Initial)

Prisoner Number V-45472

Institutional Address Mule Creek State Prison: C-11-217U, P.O. Box 409060, Ione, CA 94560.,

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

MARIO MERINO
(Enter the full name of plaintiff in this action.)

vs.

WARDEN, MULE CREEK STATE PRISON

MICHAEL MARTEL
(Enter the full name of respondent(s) or jailor in this action)

C 08 03231 CW

Case No.
(To be provided by the clerk of court)

**PETITION FOR A WRIT OF HABEAS CORPUS**

BY FAX

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

Santa Clara County Superior Court — San Jose, CA

Court — Location

(b) Case number, if known CC328533

(c) Date and terms of sentence 15 years to life in prison

(d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes X No ____

Where?

Name of Institution: Mule Creek State Prison

Address: P.O. Box 409099, Ione, CA 95640

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

Aggravated assault on a child under 14 and 10 years younger than the defendant.

Cal. Pen. Code sec. 269.

3. Did you have any of the following?

Arraignment: Yes X No ____

Preliminary Hearing: Yes X No ____

Motion to Suppress: Yes ____ No X

4. How did you plead?

Guilty ____ Not Guilty X Nolo Contendere ____

Any other plea (specify) ____________________

5. If you went to trial, what kind of trial did you have?

Jury X Judge alone____ Judge alone on a transcript ____

6. Did you testify at your trial? Yes X No ____

7. Did you have an attorney at the following proceedings:

(a) Arraignment Yes X No ____

(b) Preliminary hearing Yes X No ____

(c) Time of plea Yes X No ____

(d) Trial Yes X No ____

(e) Sentencing Yes X No ____

(f) Appeal Yes X No ____

(g) Other post-conviction proceeding Yes X No ____

8. Did you appeal your conviction? Yes X No ____

(a) If you did, to what court(s) did you appeal?

Court of Appeal Yes X No ____

Year: 2006 Result: Judgment Affirmed (6th Dist.).

Supreme Court of California Yes X No ____

Year: 2006 Result: Petition for Review denied.

Any other court Yes ____ No X

Year: ________ Result: ____________________

(b) If you appealed, were the grounds the same as those that you are raising in this

*Ground One was raised on direect appeal. Ground Two & Three on state habeas.

petition? See *, above. Yes ____ No____

(c) Was there an opinion? Yes X No____

(d) Did you seek permission to file a late appeal under Rule 31(a)?

Yes ____ No X

If you did, give the name of the court and the result:

Not Applicable.

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal? Yes X No____

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I. Name of Court: Santa Clara County Superior Court

Type of Proceeding: State habeas corpus petition.

Grounds raised (Be brief but specific):

a. [1] "Griffini" error.

b. [2] Ineffective asssistance of counsel.

c.

d.

Result: Denied Date of Result: 7/20/07

II. Name of Court: California Court of Appeal, 6th App. District

Type of Proceeding: State habeas corpus petition.

Grounds raised (Be brief but specific):

a. "Griffin" error.

b. Ineffective assistance of counsel.

c. ______

d. ______

Result: Denied. Date of Result: 10/3/07

III. Name of Court: California Supreme Court

Type of Proceeding: State habeas corpus petition.

Grounds raised (Be brief but specific):

a. "Griffin" error.

b. Ineffective assistance of counsel.

c. ______

d. ______

Result: Denied. Date of Result: 6/11/08

IV. Name of Court: ______

Type of Proceeding: ______

Grounds raised (Be brief but specific):

a. ______

b. ______

c. ______

d. ______

Result: ______ Date of Result: ______

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes ____ No X

Name and location of court: ______

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

need more space. Answer the same questions for each claim.

[Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: "DOYLE" ERROR

See Attachment "A", immediately following, incorporated by reference.

Supporting Facts:

Claim Two: "GRIFFIN" ERROR

See Attachment ":A", incorporated by reference.

Supporting Facts:

Claim Three: INEFFECTIVE ASSISTANCE OF COUNSEL

Supporting Facts: See Attachment ":A", incorporated by reference.

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

a. Claims based on allegations of ineffective assistance of counsel were properly raised, pursuant to state law, in the first instance on state habeas corpus.

b. To the extent that the "Griffin" claim should have been brought on direct appeal, the failure to do so resulted from ineffective assistance of counsel.

# ATTACHMENT "A"

*Merino v. Martel*

Petition for Writ of Habeas Corpus By a Person In State Custody, Q. 9B
**"GROUNDS FOR RELIEF"**

## Ground One

**"DOYLE" ERROR**
[*Doyle v. Ohio*, 426 U.S. 610 (1976)]

a. Supporting Facts

1. Petitioner and his wife Heike had been married seven years and had two children, a 6-year old son and a 4-year-old daughter, Megan.

2. Petitioner was charged with molesting Megan on October 1, 2003. At that time, Petitioner was 35 years old, had never been convicted of a felony, and had never been in trouble with the law, and had never been arrested.

3. Petitioner had been married to Heike, a German immigrant, for seven years. Petitioner was branch manager for a local company, managed 20 employees, and made a six-figure salary.

4. Petitioner and his wife had been having serious martial problems for several months prior to the subject incident, and had discussed divorce and child custody. Their arguments, mostly about money and Petitioner's drinking, had gotten so bad that Petitioner and Heike wold not speak to each other for days at a time. The issue of child custody was particularly explosive. Heike would threaten to take the children to Germany and not let them see Petitioner again. In turn, Petitioner would tell Heike that the children were U.S. citizens – unlike herself – and that he would "use every dime he had" to make sure the children stayed with him in the United States. Only about two days before the date of the offense (Oct. 1, 2003), Heike had finally decided to get a divorce.

5. At about 9:30 PM, Petitioner was sound asleep in his bed when the police came into his bedroom, arrested him for having molested his daughter, placed him in handcuffs, and put him in a police car. According to Heike, just 15 minutes before the police arrived, Petitioner had forced 4-year old Megan to orally copulate him in the master bedroom.

6. Petitioner denied the molestation, and there was absolutely no physical evidence tying him to the alleged sexual assault on the child. Specifically, there was no evidence of Megan's saliva on Petitioner's penis, no ejaculate or any body fluids found on the sheets, and no DNA evidence to corroborate the assault. Instead, the State's case rested entirely on the testimony of 4-year-old Megan and Heike, who admitted that she told her children to lie in the past.

7. Heike reported the alleged molestation in to the police while Megan was in the room, such that the child heard her mother repeatedly tell the 911 operator that Petitioner had "put his penis in Megan's mouth."

8. Psychologist Ron Meister, who had 22 years of experience specializing in suggestibility in child sexual assault interviews, testified for the defense after reviewing the prosecution's evidence. He concluded that there were several factors signaling that suggestibility played a role in Megan's statements to the police and in her trial testimony. First, Megan had been present when her mother repeatedly told police that Petitioner had put "his penis" in Megan's mouth. Second, when Officer Chavez questioned Megan after she had heard her mother state the foregoing, rather than asking her open-ended questions about what happened, he asked leading questions such as whether "daddy put anything in her mouth." Third, Detective Kaiser began the interview with Megan by using anatomical drawings rather than by waiting for Megan to bring up the subject of anatomy.

9. In his trial testimony, Petitioner adamantly denied that he had ever molested Megan. During cross-examination, the prosecutor attempted to discredit that testimony by cross-examining Petitioner about his failure to protest his innocence to the police, even though the reason for that had been Petitioner's invocation of his *Miranda* rights. Petitioner, who had been interviewed at the police station on the night of the incident by Detective Kaiser, had initially agreed to waive his *Miranda* rights; but then, after answering a few innocuous questions by Det. Kaiser, Petitioner formally invoked his right to remain silent and asked to speak with an attorney. Nevertheless, the prosecutor pressed Petitioner on the stand about what he had *not* said to Det. Kaiser. In particular, the prosecutor focused on the fact that Petitioner never expressly denied "molesting" Megan:

> Q. You never said "I didn't molest Megan"?
> A. No, I did not.
> Q. Mr. Merino, when you were informed that you were being accused of molesting your four-year-old biological daughter, the only thing you said is, "I have a lot to say about this," fair to say?
> A. Correct.
> *Q. You didn't expand on that?*
> *A. No, I did not.*
> *Q. Detective Kaiser didn't prevent you from expanding on that, did he?*
> *A. No.*

Defense counsel objected to the latter question and answer. Outside the jury's presence, counsel argued that Petitioner's silence had occurred in the exercise of his *Miranda* rights. The court sustained the objection and told the prosecutor to move on. However, the prosecutor pressed ahead with this same line of inquiry: Again he asked Petitioner why he never told Kaiser "I *didn't* molest her," and Petitioner was forced to admit again that he had never expressly denied the allegation. Inexplicably, defense counsel did not object to this or to any of the other follow-up questions by the prosecutor, which Petitioner could not effectively respond to

except by referring to Petitioner's silence after invoking his *Miranda* rights.

10. The prosecutor exploited Petitioner's post-*Miranda* silence as follows:

a. The prosecutor mentioned it in Opening Statement.[1]

b. The prosecutor referred to Petitioner's silence in Final Argument as evidence of his guilt. For example:

(1) RT 534: "And that the Defendant speaks with Detective Kaiser about 11:50 and that nobody who sees him visibly upset. Never visibly upset even though he's being accused of child molest."

(2) RT 547: The defendant is guilty. And his demeanor and his attitude and his testimony shows it. He's not visibly upset when he's arrested."

11. The court instructed the jury, pursuant to CALJIC 2.71.5, that:

> If you should find from the evidence that there was an occasion where the defendant [one] under circumstances which reasonably afforded him an opportunity to reply, [two] failed to make a denial in the face of an accusation expressed directly at him or in his presence charging him with a crime for which the defendant is now on trial or tending to connect him with its commission, and [three] that he heard the accusation and understood its nature, then the circumstance of his silence on that occasion *may be considered against him as indicating that an admission that the accusation thus made was true.*

---

[1]The opening statements were not transcribed, and therefore cannot be reconstructed at this time from the court reporter's notes, which Petitioner objects to as a violation of his right to a complete transcript of the trial. That said, at RT 217 et seq. the court summarizes the prior proceedings as follows: During the prosecutor's opening statement, he said that the evidence would show that Petitioner did not "question" the officers about what they were doing and why, when the officers came into his bedroom and rousted him. Petitioner's counsel belatedly objected that this infringed upon Petitioner's Fifth Amendment rights, as anything that Petitioner said could and would have been used against him, and court deemed the objection to be "not timely". Nevertheless, the court prohibited the People from mentioning the defendant's silence during the arrest. At the same time, however, the People were permitted to introduce evidence to the effect that Petitioner failed to make a "verbal" response to the contact with the police, and "did not appear upset". (RT 217-20.) Petitioner contends that the latter violated Petitioner's 5th Amendment rights just as much as the People's commenting on his "silence" in the face of the officer's accusations.

12. The court gave the above instruction solely based on the prosecution's contention that Petitioner had remained silent in the face of the accusation that he had molested his daughter – which silence, as stated above, was exercised in conformity with Petitioner's *Miranda* right to remain silent. In so instructing, the court acted directly contrary to the warning in the CALJIC Use Notes that "This instruction must not be given in a situation where the failure to reply is based upon defendant's constitutional right to remain silent." Similarly, the Court of Appeal found that: "This instruction should not have been given, as the record showed that defendant's failure to reply in one situation was based upon his constitutional right to remain silent."

13. The California Appellate court did not find that no *Doyle* error occurred, but rather noted the facts in support of the *Doyle* claim and then went on to find that any *Doyle* error was harmless beyond a reasonable doubt. The appellate court's finding in this regard was unreasonable because:

a. There was no physical evidence tying Petitioner to the charged crime: Megan's saliva was not found on 's Petitioner penis, nor was there any evidence of ejaculate or other body fluids on the sheets taken from the bed where the alleged molestation occurred. The police failed to do a penile swab, thereby making it impossible for Petitioner to have obtained and/or analyzed the results to show that there was no saliva on Petitioner's penis (thus impeaching the contrary testimony by the child).

b. Heike was a thoroughly biased witness, whose testimony was motivated by financial considerations, her desire to get custody of the children, and her insecure immigration status. There were inconsistencies in Heike's testimony as to whether the bed was made or not, and whether Heike talked to Megan or not before

the police arrived. Also, Heike had told her son to lie in the past about opening some mail.

c. Both Megan's pre-trial statements and her in-court testimony were explained by Dr. Meister as the product of improper suggestion to a very young child.

d. The prosecutor's exploitation of Petitioner's post-*Miranda* silence went to the heart of the defense: Given the lack of any physical evidence, the only possible way to defend against the charge was for Petitioner to testify, contrary to the child witness and her mother, that the molestation did not occur. This made Petitioner's credibility, which the prosecutor improperly impugned, paramount to the defense.

e. Trial counsel's failure to object to all of the prosecutor's improper questions was the result of ineffective assistance of counsel. (See Ground Three.)

f. The Court of Appeal found, contrary to the evidence, that the prosecutor had not exploited 's Petitioner's post-*Miranda* silence in final argument by emphasizing what Petitioner did *not* say or do in response to the officer's questions. (Cf. RT 534 ["And that the Defendant speaks with Detective Kaiser about 11:50 and that nobody who sees him visibly upset. *Never* visibly upset even though he's being accused of child molest."]; RT 547 ["The defendant is guilty. And his demeanor and his attitude and his testimony shows it. He's *not* visibly upset when he's arrested..."]

b. Supporting Cases.

A. *Doyle v. Ohio*, 426 U.S. 610 (1976).

> When a person under arrest is informed, as *Miranda* requires, that he may remain silent ... it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.

B. *United States v. Caruto*, ___ F. 3d ___, 2008 WL 240558 (9th Cir. 6/18/08, Docket #07-50041.)

(1) *Doyle* error extends to those cases in which the defendant initially makes a limited statement after being advised of his *Miranda* rights, but later invokes his *Miranda* rights by declining to speak further with the police. *Id.*, at *8.

(2) "Caruto could not fully explain why her post-arrest statement was not as detailed as her testimony at trial without disclosing that she had invoked her *Miranda* rights. Moreover, the prosecution commanded on her failure to explain further what happened. That is the type of penalty for exercising one's Fifth Amendment rights that *Doyle* prohibits." *Id.*, at *11.

(3) "Under the harmless error standard we must consider whether it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty even without the prosecutor's impermissible argument." *Id.*, at *11 .... "A constitutional error that goes directly to the defendant's credibility usually is not harmless where the defendant's theory of the case is plausible, even if it is not particularly compelling." *Id.*, at 12.

C. *United States v. Andjuar-Basco*, 488 F. 3d 549 (1st Cir. 2007).

(1) A defendant's 5th Amendment privilege was violated when a law enforcement officer was allowed to testify before the trial jury that the defendant, after initially agreeing to speak with investigators, invoked his *Miranda* rights.

(2) *Miranda* draws no distinction between a mid-interrogation assertion of the privilege against self-incrimination and an immediate post-arrest assertion. *Id.*, at *10.

D. *People v. Belmontes* 45 Cal.3d 744 (1988); *People v. Farris* 66 Cal.App.3d 376 (1977) : When a defendant speaks with police but then invokes his *Miranda* rights,

broad questions or comments by the prosecutor which refer to defendant's post-invocation silence violate Due Process.

<u>Ground Two</u>

**"GRIFFIN ERROR"**
[*Griffin v. California,* 380 U.S. 609 (1965)]

**The trial court violated Petitioner's rights to Due Process and to a fair trial by permitting the prosecutor to question Petitioner about his silence in response to accusations leveled against him after he had waived his *Miranda* rights, and by instructing the jury that Petitioner's post-*Miranda* silence could be used to infer that he was guilty of the charge contained in the accusation.**

a. <u>Supporting Facts</u>

1. Petitioner incorporates by reference the "Supporting Facts" asserted in support of Ground One, supra.

2. Although the giving of an instruction which allows the prosecution to exploit the defendant's exercise of his *Miranda* rights is not necessarily *Doyle* error, it does necessarily amount to Griffin error. The Griffin error in this case exacerbated the harm to Petitioner's Due Process rights that was inflicted by the prosecution's illegitimate exploitation of the *Doyle* error asserted in Ground One, supra.

b. <u>Supporting Cases</u>.

A. *Griffin v. California* 380 U.S. 609 (1965); see also *Malloy v. Hogan,* 378 U.S. 1 (1964): "The Fifth Amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

B. *People v. Tealer,* 48 Cal.App.3d 598 (1975): Trial judge improperly instructed that defendant's silence could be used to infer guilt, where prosecutor sought to infer guilt from defendant's failure to deny charges to police: net effect of instruction and improper prosecution comment was that jury could infer guilt from silence.

C. *People v. Modesto,* 66 Cal.2d 695 (1967): Prejudice from *Griffin* error is demonstrated when the improper comment or instruction fills an "evidentiary gap" in the prosecution's case, or "touches a live nerve in the defense."

D. *People v. Stout,* 66 Cal.2d 184 (1967); Griffin error is reversible unless the prosecution can prove beyond a reasonable doubt that it was harmless.

## Ground Three

## INEFFECTIVE ASSISTANCE OF COUNSEL

**Trial counsel was ineffective in failing to object to the prosecutor's follow-up questioning about Petitioner's post-*Miranda* silence after the court had previously sustained an objection on that ground. Appellate counsel was ineffective in failing to combine a claim of *Doyle* error with one of "Griffin" error on direct appeal.**

a. Supporting Facts.

1. Petitioner incorporates by reference the allegations of Ground One, supra.

2. Trial counsel performed deficiently in failing to timely object to the prosecutor's references in opening statement to Petitioner's post-arrest silence; and in failing to object to the prosecutor's follow-up questions regarding Petitioner's post-*Miranda* silence after the court had previously sustained an objection to that line of questioning. This error was prejudicial to Petitioner because, in rejecting his claim of *Doyle* error on direct appeal, the Court of Appeal found, inter alia, that "defense counsel failed to object to most of the questions the prosecutor asked defendant regarding his responses to Detective Kaiser's questions, and the court sustained the objection that counsel did raise".

3. Appellate counsel performed deficiently in failing to raise a claim of *Griffin* error on direct appeal in tandem with a claim of *Doyle* error. That failure was prejudicial because *Doyle* error is generally limited to damage to the defense caused

by the prosecutor's questioning, whereas *Griffin* error encompasses as well any jury instructions which permit the jury to infer guilt from the defendant' s invocation of his *Miranda* rights.

4. The appellate court's finding that any *Doyle* error was harmless beyond a reasonable doubt is unreasonable because the court failed to take into account the effect of Griffin error on top of *Doyle* error, which is the situation here. See also the reasons set forth in ¶13 of Ground One.

b. Supporting Cases.

A. Petitioner incorporates by reference the cases cited in Ground One and Ground Two.

B. *Wiggins v. Smith,* 123 S.Ct. 2527 (2003): Trial counsel is ineffective in failing do sufficient pre-trial investigation to be able to make reasonable tactical decisions.

C. *In re Wilson,* 3 Cal.4th 945 (1992): Petitioner entitled to habeas corpus relief based on ineffective assistance of counsel, where trial counsel failed to raise constitutional claim that had reasonable chance of success.

D. *Smith v. Robbins,* 528 U.S. 259 (2000).

Appellate counsel ineffective in failing to raise record-based claim that had reasonable chance of success on appeal.

Dated: July 3, 2008.

Respectfully submitted,

KENT A. RUSSELL

Attorney for Petitioner
MARIO MERINO

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

See generally Attachment "A", "Supporting Cases".

Do you have an attorney for this petition? Yes X No____

If you do, give the name and address of your attorney:

Kent A. Russell, 2299 Sutter St., San Francisco, CA 94115.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 2, 2008
Date

MARIO MERINO
Signature of Petitioner

(Rev. 6/02)